IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MICHAEL LEWIS, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-22-3288 |
| PORTS AMERICA CHESAPEAKE, LLC, et. al, | * | |
| | * | |
| Defendants. | | |

\*\*\*

# MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Steamship Trade Association's ("STA") Motions to Dismiss (ECF No. 11), and Defendant Ports America Chesapeake, LLC's ("Ports America") Motion to Dismiss (ECF No. 17). The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2023). For the reasons set forth below, the Court will grant the Motions.[1]

## I. BACKGROUND[2]

Plaintiff Michael Lewis was employed at Defendant Ports America, a member-employer of Defendant STA, from October 31, 2003 to January 30, 2011. (Am. Compl.

---

[1] There is also a pending Motion for Leave to Proceed in Forma Pauperis (ECF No. 2). On February 21, 2023, the Court ordered Lewis to file an amended Motion to Proceed in Forma Pauperis. (ECF No. 4). No such amended motion was ever filed, and Lewis paid the filing fee on March 27, 2023. Accordingly, the pending Motion for Leave to Proceed in forma pauperis (ECF No. 2) will be denied as moot.

[2] Unless otherwise noted, the Court takes the following facts from the Amended Complaint (ECF No. 7) and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

¶¶ 2–3, 20, ECF No. 7).³ While employed at Ports America, Lewis completed a two-week Container Crane Operator Maritime Institute of Technology and Graduate Studies ("MITAG") course. (Id. ¶ 22). Lewis alleges that following completion of the course, he was denied the opportunity to complete the practical portion of the training that typical follows the course due to purported lack of funding. (Id. ¶¶ 23–25). Twelve white Ports America employees were given the opportunity to complete the practical training immediately following the MITAG course, and Lewis alleges that between 2007–2015 white trainees, trainees under 40, and trainees with less seniority than him were trained, certified, and promoted to crane operator positions. (Id. ¶¶ 25, 31–34). Lewis requested an opportunity to complete the practical training several times between 2008 and 2015. (Id. ¶ 29). Lewis filed an initial grievance in 2012 or 2013 and a second internal grievance on June 28, 2015 alleging age and race discrimination. (Id. ¶¶ 26, 28).

On August 26, 2015, Lewis initiated contact with the United States Equal Employment Opportunity Commission ("EEOC") and alleged age and race discrimination. (Id. ¶ 10). On September 1, 2015, Lewis filed a charge of discrimination with the EEOC alleging age discrimination.⁴ (Id. ¶ 11). On February 12, 2021, the EEOC issued a determination that there was reasonable cause to believe that Lewis was discriminated against on the basis of age and race in violation of Title VII and afforded Ports America

---

³ Citations to page numbers refer to the pagination assigned by the Court's Case Management/Electronic Files ("CM/ECF") system.
⁴ The Amended Complaint does not allege that Lewis raised race discrimination in his September 1, 2015 charge of discrimination. Following Lewis' intake and the EEOC investigation, the EEOC determined that there was reasonable cause to believe Lewis was discriminated against based on his race. (Am. Compl. ¶ 14).

the opportunity to participate in conciliation. (Id. ¶ 14–15). The parties could not reach a settlement, and on November 29, 2022, the EEOC sent Lewis a right-to-sue letter. (Id. ¶¶ 16–17).

Lewis filed a complaint in this Court pro se on December 21, 2022 against "Ports of Americ Baltimore, Inc." alleging discrimination based on race, color, national origin,[5] and age. (Compl. at 5, ECF No. 1). "Ports of Americ Baltimore, Inc." was never served. On March 21, 2023, Lewis, now represented by counsel, filed an amended complaint against Ports America and STA (collectively, "Defendants")[6] alleging discrimination on the basis of race and color in violation of Title VII 42 U.S.C. §2000e, et seq. (Count I) and 42 U.S.C. § 1981 (Count II) and age discrimination in Violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623 ("ADEA") (Count III). (Am. Compl. ¶¶ 37–66). STA filed a Motion to Dismiss for Failure to State a Claim and Failure to Exhaust Administrative Remedies on May 5, 2023. (ECF No. 11). Lewis filed an Opposition on May 19, 2023, (ECF No. 15), and STA filed a Reply on May 31, 2023, (ECF No. 16). Ports America filed a Motion to Dismiss for Failure to State a Claim and Failure to Exhaust Administrative Remedies on May 31, 2023. (ECF No. 17). Lewis filed an Opposition on June 14, 2023, (ECF No. 18), and Ports America filed a Reply on June 29, 2023, (ECF No. 19).

---

[5] Lewis withdrew his allegations of discrimination based on national origin in his amended complaint (Am. Compl. at 3, n.3).

[6] "Ports of Americ Baltimore, Inc." no longer appeared as a defendant in the Amended Complaint. The Amended Complaint states, "Plaintiff initially listed Port of America of Baltimore as the Defendant in this matter. Through this Amended Complaint, the Defendants have been identified as registered." (Am. Compl. at 1, n. 1).

## II.   DISCUSSION

**A.   <u>Standards of Review</u>**

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." <u>King v. Rubenstein</u>, 825 F.3d 206, 214 (4th Cir. 2016) (quoting <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. <u>Goss v. Bank of Am., N.A.</u>, 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting <u>Walters v. McMahen</u>, 684 F.3d 435, 439 (4th Cir. 2012)), <u>aff'd</u>, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, accept the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. <u>See</u> <u>Albright v. Oliver</u>, 510 U.S. 266, 268 (1994); <u>Lambeth v. Bd. of Comm'rs of Davidson Cnty.</u>, 407 F.3d 266, 268 (4th Cir. 2005). But the court need not accept unsupported or conclusory factual allegations devoid

4

of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

**B.    Analysis**

    **1.    Time-Bars**

        **a.    Amended Complaint**

At the outset, Defendants argue that Lewis' Amended Complaint is time-barred. (Mem. L. Supp. Mot. Dismiss ["STA Mot."] at 7–11, ECF No. 11-1; Mem. L. Supp. Mot. Dismiss ["Ports America Mot."] at 2–5, ECF No. 17-1). Before filing a lawsuit in a federal district court under Title VII or the ADEA, an individual must first file a charge of discrimination with the EEOC. See 42 U.S.C. § 2000e–5(b), (e) (Title VII); 29 U.S.C. § 626(d)(1) (ADEA). If the EEOC declines to take action on the charge or is unable to reach a settlement, it issues a "right to sue" letter to the prospective plaintiff, who then has ninety days to file suit. See 42 U.S.C. § 2000e–5(f)(1); see also Perdue v. Roy Stone Transfer Corp., 690 F.2d 1091, 1093 (4th Cir. 1982). Title VII's ninety-day period applies to pro se plaintiffs, and the requirement is strictly construed. See, e.g., Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 149–50 (1984).

The ninety-day limitations period is subject to equitable tolling. Coleman v. Talbot Cnty. Det. Ctr., 242 F.App'x 72, 72 (4th Cir. 2007). Equitable tolling is an extraordinary form of relief which is granted sparingly. Beale v. Burlington Coat Factory, 36 F.Supp.2d 702, 704 (E.D.Va. 1999). It is appropriate "where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the

5

complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." Irwin v. Dep't of Veterans Affs., 498 U.S. 89, 96 (1990); see e.g., Valenzuela v. Kraft Inc., 801 F.2d 1170, 1175 (9th Cir. 1986) (applying equitable tolling where a plaintiff timely filed a Title VII claim in a state court lacking jurisdiction over those claims); Clymore v. U.S., 217 F.3d 370, 375–76 (5th Cir. 2000) (applying equitable tolling to second lawsuit where plaintiff timely filed first action in the wrong venue and promptly re-filed it in the correct venue after the statute of limitations had run); see also Haekal v. Refco, Inc., 198 F.3d 37, 43 (2d Cir. 1999) (equitable tolling is permitted "where necessary to prevent unfairness to a diligent plaintiff."). "Tolling may also be appropriate where the EEOC's notice did not adequately inform the plaintiff of the ninety day limit, where a motion for appointment of counsel is pending, or where the court has lead the plaintiff to believe that he has satisfied the statutory prerequisite to sue." Williams v. Sears, Roebuck & Co., 143 F.Supp.2d 941, 946 (W.D.Tenn 2001); see also Gibson v. Frazier Co., 991 F.2d 795 (6th Cir. 1993) (unpublished table decision); see, e.g. Carlile v. S. Routt Sch. Dist. RE 3-J, 652 F.2d 981, 986 (10th Cir. 1981) (permitting Title VII filing beyond the ninety-day window where plaintiff "relied on the [d]istrict [c]ourt's unsolicited order extending the time within which she could file a complaint."). "When equitable tolling is applied, the limitations period is deemed interrupted[, and] when the tolling condition or event has ended, the claimant is allowed the remainder of the limitations period in which to file his action." Haekal, 198 F.3d at 43.

Here, Lewis received a right to sue letter dated November 29, 2022. (Am. Compl. ¶ 17). He filed a complaint pro se on December 21, 2022, twenty-two days from the date

of the right to sue letter and within the ninety-day limitations period. (Id. ¶ 18). Lewis included the right to sue letter and a form complaint alleging failure to promote and train from 2013–2015. (Compl. at 1–13, ECF No. 1); contra Baldwin Cnty., 466 U.S. at 151–52 (denying equitable tolling where plaintiff filed only a right to sue letter with no complaint). On February 21, 2023, the Court afforded Lewis an opportunity to amend his Complaint within twenty-eight days to provide factual allegations in compliance with Federal Rule of Civil Procedure 8(a). (Feb. 21, 2023 Order at 2–3, ECF No. 4). During that time period, Lewis obtained representation and filed an amended complaint. (See generally Am. Compl.). This is not a situation where a claimant failed to "exercise due diligence in preserving his legal rights." Irwin, 498 U.S. at 96. Rather, Lewis timely pursued his judicial remedies by filing a defective pleading during the statutory period, and the Court in its February 21, 2023 Order stated that Lewis "may have a colorable claim" and directed Lewis to amend his complaint within twenty-eight days without mentioning the ninety-day time-bar, which led Lewis to believe that he had "satisfied the statutory prerequisite to sue." Williams, 143 F.Supp.2d at 946; (Feb. 21, 2023 Order at 2–3, ECF No. 4). Accordingly, tolling of the ninety-day period is appropriate here. The Court finds that the ninety-day time period was tolled either at Lewis' filing of his first complaint or at the February 21, 2023 Court Order.[7] The tolling ended upon Lewis' filing of his amended

---

[7] If the tolling period started at the filing of Lewis' first complaint, he filed his amended complaint twenty-two days after the right-to-sue letter. If the tolling period started at the Court's February 21, 2023 Order, Lewis filed his amended complaint eighty-four days after the right-to-sue letter.

complaint. Under either tolling period, Lewis' amended complaint was filed within the ninety-day window and will not be dismissed as untimely.

   **b. Section 1981**

Section 1981 prohibits "discrimination in employment on the basis of race." Yashenko v. Harrah's NC Casino Co., 446 F.3d 541, 551–52 (4th Cir. 2006); see Johnson v. Ry. Express Agency, Inc., 421 U.S. 454, 459–60 (1975) ("§ 1981 affords a federal remedy against discrimination in private employment on the basis of race."); Nnadozie v. Genesis Healthcare Corp., 730 F.App'x 151, 156 (4th Cir. 2018). The Fourth Circuit recently held that actions arising under § 1981 are subject to a catch-all four-year statute of limitations under 28 U.S.C. § 1658. Chambers v. N.C. Dep't of Just., 66 F.4th 139, 141–42 (4th Cir. 2023).

Lewis filed this action on December 21, 2022. (ECF No. 1). Therefore, under the four-year statute of limitations period, any claims Lewis has alleged for violation of § 1981 are barred if they occurred prior to December 21, 2018. In his Amended Complaint, Lewis alleges only that Defendants engaged in discriminatory conduct from 2007 through 2015. (Am. Compl. ¶¶ 22–29). Even the latest possible discriminatory conduct alleged occurred three years outside the four-year statute of limitations period.

Lewis argues that his claims are not time-barred because he was not on notice that Defendants' failure to train was based on his race until the EEOC issued its February 12, 2021 determination. (Pl.'s Opp'n Def. STA's Mot. Dismiss ["Opp'n"] at 11, ECF No. 15-1). "[A] cause of action accrues when the plaintiff possesses sufficient facts about the harm done [ ] that reasonable inquiry will reveal [a] cause of action." Nasim v. Warden, 64 F.3d

951, 955 (4th Cir. 1995); see also Howell v. Cnty. Comm'n of Hampshire Cnty., No. 21-1023, 2022 WL 61428, at *1 (4th Cir. Jan. 6, 2022) ("[A] cause of action accrues either when the plaintiff has knowledge of his claim or when he is put on notice . . . to make reasonable inquiry and that inquiry would reveal the existence of a colorable claim."). By Lewis' own admission, he "c[a]me to the conclusion that [he was] being discriminated against based on race" by June 28, 2015.[8] (June 28, 2015 Grievance Form at 2, ECF No. 15-2). All events giving rise to the alleged discrimination took place before the September 1, 2015 filing of the EEOC grievance, and by filing the June 28, 2015 internal grievance and later the EEOC grievance, Lewis has shown that he was on notice of a cause of action for racial discrimination. (See Am. Compl. ¶ 11, 28). Accordingly, Lewis' § 1981 claims are barred by the four-year statute of limitations, and Count II of his Amended Complaint must be dismissed with prejudice.

### 2. Exhaustion of Remedies

Defendants argue that Lewis' Title VII and ADEA claims must be dismissed for failure to exhaust his administrative remedies because his EEOC discrimination charge was

---

[8] While a court may not ordinarily consider extrinsic evidence when resolving a Rule 12(b)(6) motion, see Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC, 794 F.Supp.2d 602, 611 (D.Md. 2011), this general rule is subject to several exceptions. For example, a court may consider documents attached to the complaint, see Fed.R.Civ.P. 10(c), as well as those attached to briefing for the motion to dismiss, so long as they are integral to the complaint and authentic. See Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006). Courts may also consider documents referred to and relied upon in the complaint—"even if the documents are not attached as exhibits." Fare Deals Ltd. v. World Choice Travel.com, Inc., 180 F.Supp.2d 678, 683 (D.Md. 2001). Here, the June 28, 2015 grievance is clearly integral to the Complaint, which refers to the grievance, and there is no dispute as to its authenticity. Accordingly, the Court will consider this document.

not timely. (STA Mot. at 14–16; Ports America Mot. at 6–8). As detailed above, before filing a lawsuit in a federal district court under Title VII or the ADEA, an individual must first file a discrimination charge with the EEOC. See 42 U.S.C. § 2000e–5(b), (e); 29 U.S.C. § 626(d)(1). The charge must be filed within 300 days of the allegedly unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1)(B); see also Williams v. Giant Food, Inc., 370 F.3d 423, 428 (4th Cir. 2004) (Title VII claim); Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009), abrogated on other grounds by Fort Bend Cnty., Texas v. Davis, 139 S.Ct. 1843 (2019) (ADEA and Title VII claim).

A plaintiff's suit is limited to the grounds asserted in the underlying EEOC charge. Calvert Grp., 551 F.3d at 300. The Supreme Court recently held that exhaustion of administrative remedies is not a jurisdictional requirement. Fort Bend Cnty., 139 S.Ct. at 1846. Rather, exhaustion is a "claim-processing rule," and it is "'mandatory' in the sense that a court must enforce the rule if a party 'properly raises it.'" Id. at 1849 (cleaned up) (quoting Eberhart v. U.S., 546 U.S. 12, 19 (2005) (per curiam)). Timely raised, objections related to administrative exhaustion may warrant dismissal under Rule 12(b)(6) of the Federal Rules. Kenion v. Skanska USA Bldg., Inc., No. RDB-18-3344, 2019 WL 4393296, at *4 (D.Md. Sept. 13, 2019). Here, Defendants timely raised the issue that Lewis purportedly failed to exhaust administrative remedies because he did not timely file his EEOC charge. (STA Mot. at 14–16; Ports America Mot. at 6–8). Defendants have not raised any objection to the substantive grounds asserted in the Amended Complaint as compared to the EEOC charge and, accordingly, any such objections may have been waived. See Kenion, 2019 WL 4393296, at *4 ("[t]he import of Fort Bend is that

10

Defendants may waive arguments related to administrative exhaustion by failing to raise them in a timely fashion.").

Lewis filed a charge with the EEOC on September 1, 2015. (Am. Compl. ¶ 11). Defendants contend that Lewis' EEOC charge was time-barred because it relied on discrete acts that took place more than 300 days before the filing. (STA Mot. at 14–16; Ports America Mot. at 6–8). Defendants are correct that "alleged discriminatory acts which occurred more than 300 days prior to the filing of a charge may not be challenged under Title VII." McKenzie-El v. Am. Sugar Refinery, Inc., No. RDB-20-0917, 2020 WL 7489021, at *4 (D.Md. Dec. 21, 2020), aff'd sub nom. McKenzie-El v. Am. Sugar Refining, Inc., No. 21-1089, 2021 WL 5412341 (4th Cir. Nov. 19, 2021). Lewis' argument that the alleged discrimination was a "continuing action" and thus should allow for an extended limitations period is not persuasive. (See Opp'n at 11). The Supreme Court held in National R.R. Passenger Corp. v. Morgan that an employee must file a charge of discrimination within the appropriate limitations period as to each discrete act of discrimination that occurred and that discrete acts of discrimination "are not actionable if time barred, even when they are related to acts alleged in timely filed charges." 536 U.S. 101, 113 (2002). Denial of training opportunities is a discrete act of discrimination, so it cannot be deemed a "continuing violation." Bennett v. U.S., 2005 U.S. Dist. LEXIS 52691, *10–11 (D.Md. June 29, 2005). Accordingly, only Lewis' allegations that occurred on or after November 5, 2014 (300 days before the filing of the EEOC charge) were timely filed with the EEOC. Therefore, to the extent Lewis' Title VII and ADEA claims are based on Defendants' conduct that occurred prior November 5, 2014, the claims are untimely. See

Perkins v. Int'l Paper Co., 936 F.3d 196, 207 (affirming dismissal of claims based on conduct that occurred more than 300 days before filing of charge).

Lewis states in his Amended Complaint that on June 28, 2015, he filed "a Seniority Board/Trade Practice Grievance alleging discrimination based on race and age due to denied crane training" that "[o]n several occasions between 2008 and 2015, [he] requested an opportunity to complete the practical portion of the training" (Am. Compl. ¶¶ 28–29). Taking the facts in the light most favorable to Lewis, discrete acts of discriminatory denial of training may have occurred sometime in 2014 and 2015, plausibly within the 300-day window of his EEOC filing. Claims based on conduct occurring less than 300 days before the EEOC filing will not be dismissed for failure to exhaust administrative remedies.

### 3. Failure to State a Claim

Finally, Defendants argue that Lewis' Complaint must be dismissed for failure to state a claim. (STA Mot. at 16–17; Ports America Mot. at 8–9). As this Court already dismissed the § 1981 claim and the Title VII and ADEA claims prior to November 5, 2014, the only remaining claims are Title VII and ADEA claims based on conduct occurring on or after November 5, 2014.

Title VII makes it unlawful for an employer to discriminate against an employee "with respect to [] compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-(2)(a)(1). The ADEA similarly makes it unlawful for an employer to engage in discriminatory conduct because of an employee's age. 29 U.S.C. § 623(a)(1). The Fourth Circuit applies the same framework used in Title VII cases to ADEA cases. See Lovelace

v. Sherwin-Williams Co., 681 F.2d 230, 238–41 (4th Cir. 1982) (adapting the framework used in Title VII cases to ADEA cases).

A plaintiff may establish a Title VII claim, or in turn an ADEA claim, "either 'through direct and indirect evidence of retaliatory [or discriminatory] animus,' or through a burden-shifting 'pretext' framework." Netter v. Barnes, 908 F.3d 932, 938 (4th Cir. 2018) (quoting Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 249 (4th Cir. 2015)); see also Lovelace, 681 F.2d at 238–41. Unsupported or conclusory factual allegations devoid of any reference to actual events will not suffice and the Court need not take them as true. See United Black Firefighters, 604 F.2d at 847.

Lewis offers no direct evidence of discrimination or retaliation. See Cole v. Fam. Dollar Stores of Md., Inc., 811 F.App'x 168, 175 (4th Cir. 2020) ("Direct evidence is 'evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.'" (quoting Taylor v. Va. Union Univ., 193 F.3d 219, 232 (4th Cir. 1999))). Accordingly, the Court will evaluate Lewis' claims under the burden-shifting framework first articulated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

To establish a discriminatory denial of training claim under the McDonnell Douglas burden-shifting framework, Lewis must eventually put forth a prima facie case by establishing that:

> (1) he is a member of a protected class;
> (2) the employer provided training to its employees;
> (3) he was eligible for the training; and
> (4) he was not provided training under circumstances giving rise to an inference of discrimination.

13

See Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649–50 (4th Cir. 2002).

The Court is mindful that a Title VII plaintiff need not satisfy all the elements set forth above to survive a motion to dismiss. See Swierkiewicz, 534 U.S. at 510 ("The prima facie case under McDonnell Douglas, however, is an evidentiary standard, not a pleading requirement."); accord Parker v. Child.'s Nat'l Med. Ctr., Inc., No. ELH-20-3523, 2021 WL 5840949, at *9 (D.Md. Dec. 9, 2021) ("At the motion to dismiss stage, a plaintiff need not establish a prima facie case of discrimination."). Instead, at the motion to dismiss stage, a plaintiff need only "allege[] facts that plausibly state a violation of Title VII 'above a speculative level.'" Bing v. Brivo Sys., LLC, 959 F.3d 605, 617 (4th Cir. 2020) (quoting Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010)), cert. denied, 141 S.Ct. 1376 (2021). The Court considers the "totality of the circumstances" in determining whether Lewis has adequately alleged discrimination. See Strothers v. City of Laurel, 895 F.3d 317, 330–31 (4th Cir. 2018) ("[T]he connection between animus and conduct may be inferred from the totality of the circumstances."); see also Woods v. City of Greensboro, 855 F.3d 639, 649 (4th Cir. 2017) (concluding that a court "may infer discriminatory intent from evidence of a general pattern of . . . discrimination in the practices of a defendant"); Guirkin v. CMH Physician Servs., LLC, No. 3:20CV59, 2020 WL 6829769, at *7 n.13 (E.D.Va. Nov. 20, 2020) ("Although [plaintiff's] individual allegations do not by themselves prove discriminatory animus, the totality of circumstances surrounding his termination gives rise to the inference that [plaintiff] was fired, at least in part, because of his [protected status].").

Where, as here, a plaintiff attempts to rely on comparator evidence to establish circumstances giving rise to an inference of unlawful discrimination, "[t]he similarity between comparators ... must be clearly established in order to be meaningful." Swaso v. Onslow Cnty. Bd. of Educ., 698 F. App'x 745, 748 (4th Cir. 2017), as amended (Aug. 11, 2017) (quoting Lightner v. City of Wilmington, N.C., 545 F.3d 260, 265 (4th Cir. 2008). "Overall, the inquiry simply asks whether there are sufficient commonalities on the key variables between the plaintiff and the would-be comparator to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination." Id. (quoting Eaton v. Ind. Dep't of Corr., 657 F.3d 551, 556 (7th Cir. 2011)).

Lewis has sufficiently alleged all of the elements of a prima facie case for discriminatory denial of training. He has sufficiently alleged that he is a member of a protected class (African American and born in 1960), (Am. Compl. ¶ 1); that Defendants provided the training he sought to at least twelve other employees, (Am. Compl. ¶ 25); that he was plausibly eligible for the practical training having successfully completed required classroom training, (Am. Compl. ¶¶ 22, 24); and that the denial of training gives rise to an inference of discrimination because employees who were permitted to complete the training were white and/or under the age of 40, (Am. Compl. ¶¶ 25, 31).

Lewis alleges in the Amended Complaint that other Ports America employees who were white and/or under the age of 40 were permitted to complete the practical portion of training while he was not. (Am. Compl. ¶¶ 41–43, 61–62). Though Lewis does not provide the names of the alleged comparators in the Amended Complaint, names of comparators

15

are included in exhibits to Lewis' briefing, including Lewis' EEOC Intake Questionnaire (EEOC Intake Questionnaire at 3, ECF No. 15–4), which the Court finds is referenced in Lewis' amended complaint, integral to the amended complaint, and authentic and, accordingly, may considered on a motion to dismiss. See supra note 8. Lewis states that twelve white employees completed the same classroom training as him but were allowed to immediately proceed to the practical training.[9] (Am. Compl. ¶ 25). Lewis states that the trainees were all "subjected to the same training process" but white trainees and trainees under 40 received more favorable treatment. (Am. Compl. ¶ 31); see Tinsley v. City of Charlotte, 854 F.App'x 495, 500–01 (4th Cir. 2021) (explaining that plaintiffs relying on comparator evidence must establish that they were subject to the same standards as comparators). Lewis additionally has alleged that participation in practical training is determined by the "Gang Carrier." (Am. Compl. ¶ 32); see Smith v. Vilsack, 832 F.Supp.2d 573, 584 (D.Md. 2011) (considering plaintiffs' failure to allege which employees were responsible for denying him training opportunities in granting motion to dismiss). Taking the facts in the light most favorable to Lewis, he has adequately alleged circumstances giving rise to an inference of unlawful discrimination.

STA additionally argues that the Amended Complaint should be dismissed against it because the Amended Complaint does not contain any allegations that STA was Lewis' employer under Title VII and does not contain any allegations of actions taken by STA

---

[9] Lewis does not specify when the other employees completed the training, so taking the facts in the light most favorable to Lewis, the Court assumes that some or all of these employees could have been allowed to complete the practical training after November 5, 2015.

against Lewis. (STA Mot. at 17). Lewis contends that the "joint employer or integrated employer doctrine[s]" qualify STA as Lewis' employer for purposes of the Amended Complaint. (Opp'n at 12). Under the integrated employer doctrine, a court may find that separate companies are "so interrelated that they constitute a single employer." Hukill v. Auto Care, Inc., 192 F.3d 437, 442 (4th Cir. 1999), abrogated on other grounds by Arbaugh v. Y & H Corp., 546 U.S. 500 (2006). Courts consider four factors in determining whether to treat corporate entities as "integrated employers": "(1) common management; (2) interrelation between operations; (3) centralized control of labor relations; and (4) degree of common ownership/financial control." Gilbert v. Freshbikes, LLC, 32 F.Supp.3d 594, 602 (D.Md. 2014) (quoting Hukill, 192 F.3d at 442). "Whether separate entities can be joined as a single employer is a fact-intensive inquiry" and it is "ordinarily inappropriate for courts to apply the integrated employer test at the motion to dismiss stage." Gilbert, 32 F.Supp.3d at 602 (D.Md. 2014). However, Lewis has made no factual allegations that STA and Ports America are a "single employer" with common management ownership, operations, or labor relations. In his Amended Complaint, Lewis alleges only that "Defendant Ports America Chesapeake, LLC is a member-employer of the Steamship Trade Association." (Am. Compl. ¶ 3). Because Lewis alleges no facts showing that STA and Ports America are integrated employers, any claim that Defendants are a single employer cannot survive a motion to dismiss.

The joint employer doctrine applies where two employers "share or co-determine those matters governing the essential terms and conditions of employment." Butler v. Drive Auto. Indus. of Am., Inc., 793 F.3d 404, 408 (4th Cir. 2015) (quoting Bristol v. Bd. of

17

Cnty. Comm'rs, 312 F.3d 1213, 1218 (10th Cir. 2002) (en banc)). The doctrine is often applied in cases involving temporary employment or staffing agencies. See, e.g. Lima v. Addeco, 634 F.Supp.2d 394, 400 (S.D.N.Y. 2009); Sibley Mem'l Hosp. v. Wilson, 488 F.2d 1338, 1341 (D.C.Cir.1973). Lewis has not alleged that STA supervised him or exercised control over the terms of his employment. See Butler v. Drive Auto. Indus. of Am., Inc., 793 F.3d 404, 415 (4th Cir. 2015). Without any such allegations, the Court cannot conclude that STA and Ports America were joint employers of Lewis and cannot impute the allegations Lewis makes against Ports America to STA as well. Because Lewis has not provided any facts to establish that STA and Ports America were integrated or joint employers and Lewis has not separately alleged any facts alleging that STA was involved in the alleged discrimination, Lewis' remaining claims against STA must be dismissed without prejudice for failure to state a claim.

In regard to Ports America, Lewis has alleged that white employees under the age of 40, after completing the same classroom training he completed, were allowed to advance to practical training while he was not. (Am. Compl. ¶¶ 41–43, 61–62). Defendants offer no explanation why this is so. Thus, the Amended Complaint gives rise to a reasonable inference that, but-for Lewis' race, color, or age, he would have been afforded the opportunity to complete training, which Lewis alleges would lead to "increased salary, fringe benefits, and employment opportunities." (Am. Compl ¶ 35). Accordingly, Lewis' Title VII and ADEA claims, to the extent they are based on actions that occurred on or after November 5, 2014, survive Ports America's Motion to Dismiss.

### III.    CONCLUSION

For the foregoing reasons, the Court will grant STA's Motion to Dismiss (ECF No. 11) in its entirety. The Court will grant Ports America's Motion to Dismiss as to Count II and allegations in Counts I and III from before November 5, 2014. The Court will deny Defendants' Motion as to allegations in Counts I and III from on or after November 5, 2014. A separate Order follows.

Entered this 7th day of March, 2024.

                                                              /s/
                                        George L. Russell, III
                                        United States District Judge